[Civil No. 700.   Filed March 28, 1900.]

[60 Pac. 896.]

## E. A. WILTSEE, Plaintiff and Appellant, v. THE KING OF ARIZONA MINING AND MILLING COMPANY, a Corporation, Defendant and Appellee.

1. MINES AND MINING—LOCATION OF CLAIM—NOTICE OF LOCATION—DESCRIPTION — CONSTRUCTION. —As to a mining location notice, there is no rule of necessity, such as exists in the construction of a deed, which requires that the term "easterly," used without qualifying language, shall denote due east, and the term "westerly" shall denote due west.   In the sense in which "easterly" is used by the miner and prospector, the term denotes the general course of a vein or location running nearer towards the east than any of the other cardinal points of the compass.

2. SAME—SAME—SAME—SAME—SAME—WHERE BOUNDARIES ARE NOT DEFINITELY LOCATED BY ERECTION OF MONUMENTS AT TIME—AREA RESERVED.—A notice of location which gives the course of the location as running westerly so many feet from a discovery shaft or point of discovery, until boundaries are definitely located by

the erection of monuments, must be held to reserve from entry by subsequent locators the surface area which might be included within any location so made that, were a line drawn lengthwise through the center of said claim from the west center end through the point of discovery to the east center end of said claim, said line would lie at some point between east forty-five degrees north and east forty-five degrees south from the point of discovery.

3. SAME — SAME — SAME — SAME — SAME — WHERE MONUMENTS ARE PLACED—INTERVENING RIGHTS PROTECTED.—Should the locator, at the time of posting his notice, in addition to giving the general course of his vein, place monuments at the center of each end-line, and thus definitely give notice to subsequent locators as to the meaning and intent of the language used in his notice as to the general course of his location, under the law he is bound by the location thus made and defined, so that he may not thereafter, and during the ninety days permitted for the perfection of his location, change the course of his location to the prejudice of intervening rights.

4. SAME—SAME—SAME—SAME—SAME—INSTRUCTIONS TO JURY.—Where the original location notice as posted did not definitely locate the easterly end of the claim, the court properly refused to charge that the law requires the location notice to substantially conform to the location certificate, and if the locator changed the easterly end of the claim from where it was first located by his location notice to a point eight hundred feet northerly, as fixed by the location certificate, such change was void, as it was not a substantial compliance with the notice.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Yuma. Webster Street, Judge. Affirmed.

The facts are stated in the opinion.

C. W. Wright, for Appellant.

Frank Cox, and E. S. Ives, for Appellee.

SLOAN, J.—The King of Arizona Mining and Milling Company, appellee herein, made application in the United States land office at Tucson for patents to a group of mining claims situated in Yuma County, among them being one known as the "Homestake." The official survey of the Homestake showed that it conflicted with the Black Iron and the Iron Mask mining claims, owned by the appellant, Wiltsee, the area of conflict between the Homestake and Black

Iron claims being 3.6 acres and the area of conflict between the Homestake and Iron Mask claims being 5.6 acres. Wiltsee filed his adverse in the land office against the issuance of patent to the appellee to the ground in conflict, and within the time allowed by law in aid of said adverse brought suit in the district court of Yuma County, setting up in his complaint the location of the Black Iron and the Iron Mask claims, on February 25, 1897, by one Edward Cain and one William O'Brien, citizens of the United States, the conveyance from said locators of said claims to himself, the pendency of the application for patent made by appellee, his adverse of the same within the time allowed by law, the conflict between the Homestake and the Black Iron and Iron Mask claims, the invalidity of the Homestake; and charged a wrongful intrusion upon, and claim of right by appellee under the Homestake location of, the ground in conflict. In its answer the appellee pleaded: First, a general denial; second, not guilty; and, third, the location of the Homestake, and its validity, by virtue of prior discovery and location, a full compliance with the laws of the United States and the Arizona statutes pertaining to the location of lode mining claims. The trial was had before a jury upon the issues thus made, and a verdict and judgment entered for the appellee. From an order overruling his motion for a new trial, and from the judgment, Wiltsee appeals to this court.

The Homestake mining claim location was initiated February 15, 1897, by one Eichelberger. who, as the testimony shows, called himself, "for convenience' sake," Charles Edwards. On this date Eichelberger erected a monument, and placed therein the following notice: "Notice of Homestake Lode. We claim by discovery 1,500 feet along this vein and 300 feet on each side of this notice. We claim 150 feet in a westerly direction and 1,350 feet in an easterly direction. Located this day, the 15th day of February, 1897, by Charles Edwards and H. B. Gleason." One of the disputed questions of fact upon the trial was as to whether, at the time Eichelberger initiated this location, he erected any other monument than the one in which the notice was placed. The appellant sought to prove that, in addition to the initial monument, Eichelberger erected one at the easterly end of the claim; that subsequently, after the location by appel-

lant's grantors of the Black Iron and Iron Mask mining claims, he shifted the easterly end from the point where the original monument was claimed to have been placed to a point about eight hundred feet northerly, taking in, in this way, the area of conflict between the Homestake and the Black Iron and Iron Mask. The contention of the appellee was that no monuments were built at the time of the discovery and location of the Homestake except the initial monument, until late in February, when Eichelberger and one Guerra built one on the west end-line; and that no monument was erected on the east end-line of the claim until March 23d, when Eichelberger completed the location of the claim by the erection of the other monuments required to fully mark out the boundaries of the claim.

The assignment of errors made by appellant presents two questions for our consideration: First. Assuming that Eichelberger changed subsequent to his discovery and initial location of the Homestake, and within the ninety days required of the locator to perfect his location, the course of his location, by moving the easterly end-line thereof so as to include portions of the Black Iron and Iron Mask claims, under his location notice, did Eichelberger possess the right to make such change, and take in any portion of the Black Iron and Iron Mask mining claims? Second. If a consideration of the first proposition leads to the conclusion that Eichelberger possessed no such right, then did the trial court correctly instruct the jury upon this question?

At the time of the location of the Homestake by Eichelberger act No. 42 of the Laws of 1895 was in force. The first six sections of this act pertain to the location of lode mining claims, and these read as follows:—

"Section 1. Every notice of location of a mining claim shall contain: First, the name of the claim located; second, the name of the locator; third, the date of location; fourth, the number of feet in length of said claim and the number of feet claimed on each side of the center of the discovery shaft, lengthwise of the claim; fifth, the general course of the lode deposit or premises located; sixth, the locality of the claim with reference to some natural object, or permanent monument, as will identify the claim.

"Sec. 2. All mining locations hereafter located, the cer-

tificate of location of which shall not contain: First, the name of the lode, or premises; second, the name of the locator or locators; third, the date of location; fourth, the number of feet in length of said claim and the number of feet claimed on each side of the center of the discovery shaft, lengthwise of the claim; fifth, the general course of the lode, or premises, as near as may be; sixth, the locality of the claim with reference to some natural object, or permanent monument, as will identify the claim, shall be void.

"Sec. 3. Before filing such location certificate with the county recorder of the proper county, the discoverer shall locate his claim by: First, sinking a discovery shaft upon the premises, so claimed, to a depth of at least ten feet from the lowest part of the rim of such shaft at the surface, and deeper if necessary, until there is shown by such work a lode deposit or mineral in place; second, by posting at the point of discovery, on the surface, a plain sign or notice substantially conforming to the location certificate; third, by ma[r]king such claim or premises on the ground so that its boundaries can be readily traced.

"Sec. 4. Such surface boundaries shall be marked by eight substantial  posts, projecting at least three feet above the surface of the ground, or by substantial stone monuments at least three feet high, to wit: one at each corner of said claim, and one at the center of each end and side line thereof.

"Sec. 5. Any open cut, cross-cut, adit or tunnel, which shall be made as above provided for, as a part of, the location of a mining claim, and which shall be equal in amount of work to a shaft ten feet deep and four feet wide by six feet long, and which shall cut a lode or mineral in place at the depth of ten feet from the surface, shall be equivalent, as a discovery work, to a shaft sunk from the surface.

"Sec. 6. The discoverer shall have ninety days from the date of discovering the lode and the posting of the notice thereupon, to perform said discovery work thereon."

The various provisions of these sections as to what is termed "notice of location" and "certificate of location" are somewhat confusing. The notice of location provided for in section 1, among other things, provides that it shall contain the number of feet in length of said claim, and the number of feet claimed on each side of the center of the discovery shaft,

lengthwise of the claim. But this discovery shaft, as provided in section 6 of the act, may be sunk the requisite number of feet at any time within ninety days from the date of the discovery of the lode and the posting of the notice thereon. Again, it is provided in section 3 of the act, among other things, that before the location certificate be filed for record the locator shall post at the point of discovery on the surface a plain sign or notice substantially conforming to the location certificate. That this latter notice is the same as that referred to in section 1 seems probable from the provisions as to what it shall contain. The confusion arises out of the uncertainty of these provisions of the statutes as to when the notice of location mentioned in section 1 and section 3 must be posted on the claim, and whether a mining claim may be initiated in advance of the posting of such notice. It is difficult to understand how it would be possible for this preliminary notice to set forth the number of feet claimed on each side of the center of the discovery shaft lengthwise of the claim in advance of the sinking of such discovery shaft; and this, as we have noted, may be done at any time within ninety days from the date of discovering the lode and the posting of the notice thereon. It is contended by counsel for appellee in their brief that the notice mentioned in section 6 is not the same as referred to in sections 1 and 3; that the former must be construed as referring to some preliminary notice which the locator posts at the time of discovery, and that the latter has reference to the perfected notice of location which he is required to make and post within ninety days thereafter, and before the filing of the certificate of location described in section 2 of the act. Whether this view of the statute be the correct one, we do not find it necessary to decide, for the reason that the sufficiency of the notice of location made by Eichelberger posted on the claim at the time of the discovery of the lode is not raised by appellant. On the contrary, his contention is that the notice of location first posted defined with such particularity the course of the claim lengthwise that its direction could not thereafter be changed to the prejudice of intervening locations. The question, therefore, under this contention becomes one of construction of the language used in the notice of location of the Homestake, "We claim 150 feet in a westerly direction and 1,350 feet in an easterly direc-

tion." Notices of location have been liberally construed by the courts. It is recognized that miners have but scant opportunity of definitely locating and describing locations when these are made, as frequently happens, in remote and but little-known localities; and the physical conformation of the country may be such as to require much time and labor to determine the true course and strike of the mineral-bearing vein or lode which may be the subject of the location. The same strictness in construing a clause in a notice of location required in construing a deed would obviously be unfair and unjust to the miner. Regard should be had to the meaning which the terms "easterly" and "westerly" are given by the miners. There is no rule of necessity, such as exists in the construction of a deed, which requires that the term "easterly," used without qualifying language, shall denote due east, and the term "westerly" shall denote due west. In the sense in which "easterly" is used by the miner and prospector, the term denotes the general course of a vein or location running nearer towards the east than any of the other cardinal points of the compass. A notice of location, therefore, which gives the course of the location as running westerly so many feet and easterly so many feet from a discovery shaft or point of discovery, until boundaries are definitely located by the erection of monuments, must be held to reserve from entry by subsequent locators the surface area which might be included within any location so made that, were a line drawn lengthwise through the center of said claim from the west center end through the point of discovery to the east center end of said claim, said line would lie at some point between east forty-five degrees north and east forty-five degrees south from the point of discovery. Should, however, the locator, at the time of posting his notice, in addition to giving the general course of his vein, place monuments at the center of each end-line, and thus definitely give notice to subsequent locators as to the meaning and intent of the language used in his notice as to the general course of his location, we think, under the law, he is bound by the location thus made and defined, so that he may not thereafter, and during the ninety days permitted for the perfection of his location, change the course of his location to the prejudice of intervening rights. It would be unjust to permit a locator who has

thus marked out the course and direction of his location with certainty to include ·subsequently, by a change in the course of his location, discoveries of mineral and parts of locations which others may have made, relying upon the express representations of the prior locator as to the extent of his rights.

Applying these views to the case at bar, assuming that Eichelberger, at the time of posting the notice in question, erected no other monuments than the one at the point of discovery, his subsequent location of the east center end monument of the Homestake at the point now claimed for it was a substantial compliance with the notice of location, and no intervening rights to the ground in controversy were acquired by Wiltsee's grantors through their location of the Black Iron and Iron Mask claims. If, however, Eichelberger, at the time of posting his location notice, erected a monument at the center of the east end-line, such end-line could not thereafter be changed so as to include within the boundaries of the Homestake any portion of the Black Iron and Iron Mask which would not otherwise have been included had the east end-line of the Homestake remained as established by Eichelberger. The record discloses a sharp conflict of evidence as to whether or not Eichelberger had, prior to the location by Cain and O'Brien, fixed the center of the east end-line of the Homestake by the erection of a monument and the placing of a notice thereon. It was left, therefore, to the jury to determine this question of fact, and for the court to instruct the jury as to the effect of such change in location upon the rights of the parties to the ground in conflict. Upon this question the court instructed the jury as follows: "If the jury shall believe from the evidence in this case that the witness Eichelberger erected two monuments on the alleged Homestake mining claim, designated on the map as the 'Original Homestake Claim,' one being at about the center of the westerly or northwesterly end of said claim, and the other at about the center of the easterly or southeasterly end-line of said claim; that he placed a notice in one or the other or in both of said monuments, wherein the claim was described as lying three hundred feet on each side of said location,—then the court instructs the jury that said claim could not thereafter be moved, nor its lines changed, so as to infringe on ground that had been located before such change. Therefore,

if the jury shall believe from the evidence in this case that Eichelberger did discover mineral-bearing rock in place carrying gold; that, after such discovery, he erected two monuments on said claim, one at about the center of the westerly or northwesterly end-line of said claim and the other monument at about the center of the easterly or southeasterly end-line of said claim; and that in one of said monuments, or in both of them, he placed a notice naming said claim the Homestake, and therein claiming the same as being three hundred feet wide on each side of said locating monument; and that the alleged location of said Black Iron and Iron Mask claims, as said claims were located, if they were lawfully located, did not include any ground within the lines of the said Homestake if the same were located as above; and that, after said alleged locations, and all of them, said Eichelberger did swing the said Homestake claim on to new grounds, and that such new grounds include the grounds herein,—then you will find for the plaintiff.'' This instruction, as we conceive, clearly gave the law governing the case. Upon the same subject the appellant requested the court to give the following instruction in addition to the above (fourteenth instruction): ''The court instructs the jury that the law requires the location notice to substantially conform to the location certificate. If, therefore, you shall believe from the evidence in this case that Eichelberger swung the easterly end of the Homestake claim where it was located by the location notice, if it was so located by said notice, to a place northerly not less than eight hundred feet, where it was fixed by the location certificate, then this change is not a substantial compliance with the location notice, such change is void, and the ground in conflict is not the ground of the defendant.'' The latter request was refused by the court, and, we think, properly so, for the reason that, as we have seen, the location notice, as posted, did not definitely locate the easterly end of the Homestake claim, and under the law Eichelberger had the right, within ninety days after initiating his claim, to locate his easterly end of the Homestake at any point thirteen hundred and fifty feet in an easterly direction from the point of discovery, unless he had, prior to the location of the ground in conflict by Cain and O'Brien, definitely located the same by the erection of a monument and the placing of a notice therein.

The validity of another location, called the "World," made by Eichelberger, was brought into the case by appellee upon the theory that it included the point of discovery of the Iron Mask, and, being a prior location, made the latter an invalid one. The general verdict of the jury, in effect, was a finding that the Homestake, as surveyed for patent, substantially conformed in its general course to the original location, and, this being true, the validity or invalidity of the World location becomes of no consequence, so far as the rights of the appellant are concerned. It becomes unnecessary, therefore, to the right determination of this appeal, to pass upon the instructions given and those refused upon the request of the appellant which pertain to the subject of the World location. We find no reversible error in the record, and the judgment is therefore affirmed.

Doan, J., and Davis, J., concur.